# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| CARL MANZO ) | 16 C 7218 |
| ) | |
| Debtor/Appellant. ) | |
| ) | Judge Jorge L. Alonso |
| ) | |
| ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Debtor Carl Manzo appeals to this Court, pursuant to 28 U.S.C. § 158(a)(1), from a decision of the United States Bankruptcy Court denying confirmation of his proposed Chapter 13 repayment plan. For the following reasons, the bankruptcy court's decision is reversed.

## BACKGROUND[1]

On June 18, 2015, Mr. Manzo filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Illinois. On Schedule C, he claimed as exempt $7,292.94 in a First Financial Federal Credit Union account and $350 in a Chase Bank account under 735 ILCS 5/12-1001(g)(1), which exempts the "debtor's right to receive . . . a social security benefit." (*See* Appellant Designation of R. on Appeal at 22 (hereinafter, "R."), ECF No. 9-2.) These funds represent what remains of a lump sum payment of retroactive social security benefits that Mr. Manzo received in 2013. (Appellant's Br. at 2 (citing R. at 115), *see* R. at 130.) Mr. Manzo later amended Schedule C to claim that the funds were exempt under 42 U.S.C. §

---

[1] These background facts are taken principally from the "Statement of the Case" section of Mr. Manzo's brief. Although Seaway Bank and Trust Company, the creditor that opposed confirmation of Mr. Manzo's proposed repayment plan in the bankruptcy court, is aware of this appeal, its counsel has informed the Court via Mr. Manzo's counsel that "Seaway Bank will not be defending the appeal of the bankruptcy court's ruling. However, . . . Seaway Bank remains in opposition to Debtor's position and relies on the record on appeal to adequately convey Seaway Bank's position to the district court." (Dec. 6, 2016 Status Report, ECF No. 8.)

407. The Chapter 13 trustee ("Trustee"), joined by creditor Seaway Bank and Trust Company ("Seaway"), which held a second mortgage on Mr. Manzo's residence, objected to the exemption. On April 13, 2016, the bankruptcy court overruled the objection, finding the entire amount exempt.

On April 29, 2016, Mr. Manzo filed a modified Chapter 13 repayment plan (hereinafter, "Plan"). Because the value of Mr. Manzo's residence ($42,000) was less than the amount he owed on his primary mortgage ($51,195), the Plan classified Seaway's $9,365.61 claim based on Mr. Manzo's second mortgage as unsecured. *See* 11 U.S.C. § 506(a). According to Schedule I to Mr. Manzo's petition, Mr. Manzo's only income is $1,579 per month in social security. According to Schedule J, his total monthly household expenses are $1,549, leaving only $30 per month for plan payments. The Plan proposed that Mr. Manzo would pay that $30 per month to the Trustee for the benefit of any unsecured creditors (of which Seaway was the only one to file a claim) for 36 months, for a total of $1,080. After subtracting the Trustee's fees, Seaway would receive only $1,028.52 of its $9,3365.61 claim.[2]

The bankruptcy court held a confirmation hearing on May 25, 2016. Seaway maintained its objection to confirmation of the Plan, despite the fact that the modified Plan raised the amount Mr. Manzo proposed to pay approximately tenfold, because Mr. Manzo had access to thousands of dollars in funds he had "essentially stockpiled from Social Security benefits." (R. at 154 (May, 25, 2016 Tr. at 2:19-20).) Because Mr. Manzo could afford to pay a still higher percentage of the debt without suffering any hardship, Seaway contended, the modified Plan was not proposed

---

[2] The Plan also provided that unsecured creditors would receive "not less than 7% of their allowed amount" (R. at 147), although Seaway was the only unsecured creditor to file a claim and, as Mr. Manzo's counsel recognized in open court at the confirmation hearing, the required Plan payments amounted to more than 7% of its claim. (R. at 162-63 (May 25, 2016 Tr. at 10:24-11:1).) Counsel stated at the hearing, and argued in writing (R. at 99), that Seaway will receive over 9% of its claim, which actually still appears to understate the repayment; $1,028 is nearly 11% of $9,365.61.

2

in good faith. The bankruptcy court agreed that Mr. Manzo was not making "enough effort given [the funds he had] in the bank." (R. at 162 (*id.* at 10:12-14).) The court recognized that "there are an awful lot of cases that say you can't touch Social Security." (R. at 164 (*id.* at 12:19-20.)) But the court explained that "in the totality of the circumstances" of this particular case, the debtor's proposal of what was essentially a "lien strip," although he had access to sufficient funds in his bank accounts to pay off most, if not all, of the loan secured by the lien, amounted to a "bad faith" proposal. (R. at 164 (*id.* at 12:7-18).) The court stated that it would deny confirmation of that proposal, but if Mr. Manzo would be willing to propose a plan under which he would pay half of "what is sitting in the bank" to Seaway, the Court would "confirm over objection." (R. at 163 (*id.* at 11:3-24).)

Mr. Manzo filed a motion for leave to appeal an interlocutory order, which this Court granted. (Nov. 15, 2016 Minute Order, ECF No. 7.) This appeal followed.

## DISCUSSION

### I. LEGAL STANDARDS

#### A. Review of Bankruptcy Court Decision

An order denying confirmation of a proposed Chapter 13 repayment plan is generally not a final, appealable order, *see Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1692 (2015), but "[i]nterlocutory orders from the Bankruptcy Court may be reviewed with leave of the district court sitting in its appellate jurisdiction." *In re MCK Millennium Ctr. Parking, LLC*, No. 12 B 24676, 2015 U.S. Dist. LEXIS 56570, at *7-8 (N.D. Ill. Apr. 29, 2015) (citing 28 U.S.C. § 158(a)(3)). "The district court has broad discretion in determining whether to exercise jurisdiction over interlocutory appeals from the bankruptcy court." *Tr. of Jartran, Inc. v. Winston & Strawn*, 208 B.R. 898, 900 (N.D. Ill. 1997). "Whether an interlocutory appeal of a

non-final bankruptcy order is appropriate is analyzed pursuant to 28 U.S.C. § 1292(b)." *Rosen v. Aes/chase Bank*, No. 15-CV-7462, 2015 WL 6756290, at *2 (N.D. Ill. Nov. 3, 2015). "Under the three part test [of § 1292(b)], an interlocutory appeal is appropriate when it: (1) involves a controlling question of law; (2) over which there is substantial ground for difference of opinion; and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Tr. of Jartran*, 208 B.R. at 900. In this case, the Court has granted Mr. Manzo's motion for leave to appeal an interlocutory order because all three requirements are met. First, whether bankruptcy courts may consider the debtor's failure to commit social security benefits to a Chapter 13 plan in determining whether the debtor has proposed the plan in good faith is a controlling question of law. *See id.* at 900-01 ("[A] question of law is controlling if its resolution is quite likely to affect the outcome or the further course of litigation, even if it is not certain to do so"). Second, there is ground for difference of opinion over this question; decisions have differed, and the Seventh Circuit has not weighed in. Third, the Court has no doubt that an immediate appeal may "materially advance the ultimate termination of the litigation"; otherwise, the parties must go back to the drawing board and devise a new repayment plan.[3] For all these reasons, the Court has concluded that it is proper to hear Mr. Manzo's interlocutory appeal.

"A bankruptcy court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed de novo." *In re Midway Airlines, Inc.* 383 F.3d 663, 668 (7th Cir. 2004) (citing *In re Smith*, 286 F.3d 461, 464-65 (7th Cir. 2002)); *see also in re Adinolfi*, 543 B.R. 612, 614 (B.A.P. 9th Cir. 2016) ("We apply the de novo standard when reviewing chapter 13 plan confirmation issues requiring the interpretation of a statute."); *In re Edwin R. Smith*, 286 F.3d 461, 465 (7th Cir. 2002) ("A bankruptcy court's determination that a plan was filed in good faith

---

[3] Seaway has not objected to this appeal, and even the bankruptcy judge, in her comments at the confirmation hearing, seemed to anticipate an immediate appeal.

is a factual finding; therefore, we shall reverse only if the court's finding was clearly erroneous.")

B. **Chapter 13, Plan Confirmation, and Good Faith Requirement**

"Chapter 13 provides, for individuals [below a certain debt threshold, *see* 11 U.S.C. § 109(e)], a counterpart to Chapter 11 of the Bankruptcy Code, which authorizes the reorganization of bankrupt enterprises in lieu of their liquidation. Instead of the trustee's seizing and selling the bankrupt's nonexempt assets, as in a Chapter 7 proceeding, under Chapter 13 (as under Chapter 11) the bankrupt proposes a plan for the repayment of his debts out of future income." *In re Schaitz*, 913 F.2d 452, 453 (7th Cir. 1990). Although creditors have the right to object to a debtor's proposed plan, *see* 11 U.S.C. § 1324, Congress "gave the bankruptcy judge the sole authority to confirm or reject a plan." *Ravenot v. Rimgale (in re Rimgale)*, 669 F.2d 426, 428 (7th Cir. 1982). However, she "can [confirm the plan] only if the plan is in 'good faith,' [11 U.S.C.] § 1325(a)(3), a term neither defined in the statute nor discussed in the legislative history." *Schaitz*, 913 F.2d at 453. "In considering whether a plan is filed in good faith, the court asks of the debtor: 'Is he really trying to pay the creditors to the reasonable limit of his ability or is he trying to thwart them?'" *Edwin R. Smith*, 286 F.3d at 466 (quoting *Schaitz*, 913 F.2d at 453).

"[G]ood faith must be defined on a case-by-case basis because '[a] comprehensive definition of good faith is not practical.'" *In re Kenneth W. Smith*, 848 F.2d 813, 817 (7th Cir. 1988) (quoting *Rimgale*, 669 F.2d at 431). Factors useful for defining good faith in a particular case include the following:

> (1) Does the proposed plan state [debtor's] secured and unsecured debts accurately?
> (2) Does it state [debtor's] expenses accurately?
> (3) Is the percentage of repayment of unsecured claims correct?

> (4) If there are or have been deficiencies in the plan, do the inaccuracies amount to an attempt to mislead the bankruptcy court?
> (5) Do the proposed payments indicate "a fundamental fairness in dealing with one's creditors," [*I*]*n re Beaver,* 2 B.R. 337, 340 (Bkrtcy. S.D. Cal. 1980)?

*Kenneth W. Smith*, 848 F.2d at 817 (citing *Rimgale*, 669 F.2d at 432-33). Additionally, courts may consider factors such as "why the debtor filed under Chapter 13, how the debts arose, and whether those debts would be nondischargeable in Chapter 7" in determining whether the plan is proposed in good faith. *Kenneth W. Smith*, 848 F.2d at 818; *see also in re Love*, 957 F.2d 1350, 1357 (7th Cir. 1992) (good faith factors include "the nature of the debt, including the question of whether the debt would be nondischargeable in a Chapter 7 proceeding; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors"). "These broad sets of factors ultimately merge into a generic totality of the circumstances test." *Kenneth W. Smith*, 848 F.2d at 818 (internal quotation marks omitted) (citing *in re Sutliff*, 79 B.R. 151, 154 (Bankr. N.D.N.Y. 1987) (citing at least seventeen good-faith factors courts have used)).

## II. ANALYSIS

Mr. Manzo contends that the bankruptcy court erred by denying confirmation of his Plan and finding that Mr. Manzo had not proposed the Plan in good faith based on the fact that he did not propose to make use of funds he had previously received in social security benefits in order to pay a larger percentage of his debt to Seaway. According to Mr. Manzo, social security benefits are exempt from the bankruptcy estate, and it was error to find that the Plan was proposed in bad faith merely because it excluded social security benefits.

### A. Social Security Benefits Are Not Included In The Bankruptcy Estate

The filing of a bankruptcy petition "creates an estate," which generally comprises "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). However, § 407 of the Social Security Act provides as follows:

> **(a) In general**
> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and ***none of the moneys paid or payable or rights existing under this subchapter shall be subject*** to execution, levy, attachment, garnishment, or other legal process, or ***to the operation of any bankruptcy or insolvency law***.
> **(b) Amendment of section**
> No other provision of law, enacted before, on, or after April 20, 1983, may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section.

42 U.S.C. § 407 (emphasis added). The effect of this provision is that "social security benefits are excluded from and never enter the [bankruptcy] estate." *Charnetsky v. Buenviaje (In re Buenviaje)*, No. 2:16-BK-15191-VZ, 2016 WL 8467650, at *4 (B.A.P. 9th Cir. Mar. 10, 2016) (unpublished/nonprecedential) (citing *In re Franklin*, 506 B.R. 765, 776 (Bankr. C.D. Ill. 2014)); *see Carpenter v. Ries (In re Carpenter)*, 614 F.3d 930, 936 (8th Cir. 2010) ("[Section 407] operates as a complete bar to the forced inclusion of past and future social security proceeds in the bankruptcy estate.").

Mr. Manzo argues, citing *Carpenter*, *Franklin*, and *Law v. Siegel*, 134 S. Ct. 1188, 1197 (2014) (holding that there is no "general, equitable power in bankruptcy courts to deny exemptions based on a debtor's bad-faith conduct"), that the bankruptcy court erred by all but requiring him to pay his creditors with funds that were *his* property, not estate property. The Court agrees with Mr. Manzo to the extent that he is arguing that, in light of *Carpenter* and *Franklin*, the operation of § 407 excludes Mr. Manzo's social security benefits from his bankruptcy estate. But this argument only takes him so far because the bankruptcy court did not

hold otherwise. The Trustee objected to Mr. Manzo's claimed exemptions for the funds he received in social security benefits (although actually, because social security proceeds "do not become property of the bankruptcy estate, there [was] no need to claim them as exempt," *Franklin*, 506 B.R. at 776), but the bankruptcy court overruled the objection prior to the confirmation hearing. (Apr. 13, 2016 Order, No. 15 B 21192, ECF No. 66 (denying Mot. to Object to Debtor's Claim of Exemptions, ECF No. 24); *see* R at 7.) Thus, the bankruptcy court's ruling denying confirmation of Mr. Manzo's Plan does not appear to have been based on a mistaken understanding of the scope of the bankruptcy estate, but on the court's finding that the Plan was proposed in bad faith. The cases Mr. Manzo relies on do not directly support any argument about the denial of confirmation of a Chapter 13 plan on bad faith grounds because they were decided in a Chapter 7 context, not a Chapter 13 context.

Importantly, "[a] chapter 13 plan may propose to pay all or part of a claim against the debtor out of [either] property of the estate or property of the debtor," including prepetition property that is exempt or excluded from the bankruptcy estate. 8 *Collier on Bankruptcy* ¶ 1322.12. Thus, "nothing prevents a debtor from voluntarily contributing social security proceeds to the bankruptcy estate or voluntarily using such proceeds to fund a plan." *Franklin*, 506 B.R. at 776 (citing *Mort Ranta v. Gorman,* 721 F.3d 241 (4th Cir. 2013)). To determine whether the bankruptcy court's decision was correct, this Court must ask whether it was proper for the Court to deny confirmation of Mr. Manzo's plan on bad faith grounds based on the fact that he did not voluntarily propose to use more of his social security benefits to fund the Plan.

### B. Whether the Failure to Commit Certain Social Security Benefits to a Chapter 13 Repayment Plan Can Be Bad Faith

Neither the Supreme Court nor the Seventh Circuit has addressed the question of whether it is proper to take access to social security benefits into account in determining whether a

8

Chapter 13 debtor has proposed a repayment plan in good faith. The Ninth, Fifth, and Tenth Circuits, however, have all considered whether the fact that a Chapter 13 debtor's surplus income from social security benefits is not reflected in his repayment plan may properly impact the good faith determination. All three circuits have concluded that it may not. *See Drummond v. Welsh (In re Welsh)*, 711 F.3d 1120, 1132-33 (9th Cir. 2013) (Ripple, J., sitting by designation); *Beaulieu v. Ragos (In re Ragos)*, 700 F.3d 220, 227 (5th Cir. 2012), *Anderson v. Cranmer (In re Cranmer)*, 697 F.3d 1314, 1319 (10th Cir. 2012).

Representative of these decisions, and particularly persuasive to this Court, is the decision in *Welsh*. The debtors, Mr. and Mrs. Welsh, proposed a Chapter 13 plan that (properly) excluded Mr. Welsh's social security income of $1,165 per month. *Welsh*, 711 F.3d at 1122. Over the five-year term of the plan, they proposed to pay a total of $14,700, or only about 8% of their unsecured debts. *Id.* The bankruptcy trustee objected, arguing that the debtors had not proposed the plan in good faith because they did not propose to contribute Mr. Welsh's social security income. *Id.* But the bankruptcy court rejected that argument and confirmed the plan, "observ[ing] that 42 U.S.C. § 407(a) protects Social Security income from 'the operation of any bankruptcy or insolvency law'"; according to the bankruptcy court, considering Social Security income in the good faith analysis would water down this protection. *Id.* at 1124. A divided panel of the Bankruptcy Appellate Panel for the Ninth Circuit affirmed, *id.*, and the trustee appealed to the Ninth Circuit.

The Ninth Circuit found support for the lower courts' decisions in the history and structure of the Bankruptcy Code. The court explained that, prior to the enactment of the 2005 Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), "bankruptcy judges had authority to determine a debtor's ability to pay based on the individual circumstances of each

case and each debtor." *Id*. at 1130. In BAPCPA, Congress made specific, detailed provisions for calculating the projected disposable income available to a debtor for plan payments by subtracting expenses from "current monthly income," *see* 11 U.S.C. § 1325(b)(2)-(3), and current monthly income, "by definition, explicitly excludes 'benefits received under the Social Security Act.'" *Welsh*, 711 F.3d at 1130 (quoting 11 U.S.C. § 101(10A)(B)). Thus, the scheme specifically contemplates that the "disposable income" with which the debtor is to make plan payments may "underestimate the amount of *actual* funds that a taxpayer has available to pay unsecured creditors." *Welsh*, 711 F.3d at 1130.

The Ninth Circuit reasoned that, in providing so specifically for the calculation of disposable income, in particular by "replac[ing] a case-by-case analysis of disposable income with a rigid means test," Congress plainly intended to "cabin the discretion of bankruptcy judges in assessing disposable income." *Id.* at 1131. The rigid post-BAPCPA calculation of disposable income is a "new approach" that, according to the Ninth Circuit, signals a "'clear indication that Congress intended . . . a departure'" from the days before BAPCPA, when courts typically *did* include social security benefits in the calculation of disposable income. *Id.* (quoting *Baud v. Carroll*, 634 F.3d 327, 347 (6th Cir. 2011)).

The trustee argued that, even if the Welshes were not required to incorporate social security income in their calculation of disposable income, their "failure to dedicate Mr. Welsh's social security income to the payment of unsecured creditors requires a conclusion that the plan was not proposed in good faith, as required by section 1325(a)(3)." *Id.* at 1131. The Ninth Circuit rejected that argument:

> We cannot conclude . . . that a plan prepared completely in accordance with the very detailed calculations that Congress set forth is not proposed in good faith. To hold otherwise would be to allow the bankruptcy court to substitute its judgment of how much and what kind of income should be dedicated to the payment of

unsecured creditors for the judgment of Congress. Such an approach would not only flout the express language of Congress, but also one of Congress's purposes in enacting the BAPCPA, namely to "reduce[ ] the amount of discretion that bankruptcy courts previously had over the calculation of an above-median debtor's income and expenses." *Coop v. Frederickson (In re Frederickson)*, 545 F.3d 652, 658 (8th Cir. 2008).

*Id.* Congress explicitly excluded social security income from the calculation of disposable income, and "[w]hen Congress speaks directly to one of the good faith factors, the judicial good faith inquiry is narrowed accordingly." *Id*. (citing *Educ. Assistance Corp. v. Zellner,* 827 F.2d 1222, 1227 (8th Cir. 1987)). For all these reasons, the Ninth Circuit decided to "join every court of appeals that has decided the issue in concluding that, '[w]hen a Chapter 13 debtor calculates his repayment plan payments exactly as the Bankruptcy Code and the Social Security Act allow him to, and thereby excludes [Social Security benefits], that exclusion cannot constitute a lack of good faith.'" *Welsh*, 711 F.3d at 1132 (quoting *Cranmer*, 697 F.3d at 1319).

The Court finds this reasoning persuasive. Even if it is not clear enough from the language of 42 U.S.C. § 407 alone that Congress intended to exclude social security benefits from consideration in bankruptcy proceedings,[4] it is clear from the provisions of Chapter 13, in which Congress went to great lengths to prescribe a method of calculating income that explicitly excludes social security benefits, that Congress intended social security benefits to be beyond the reach of creditors who object to a proposed Chapter 13 repayment plan in order to boost their

---

[4] Some courts have reasoned that it is not clear because § 407 deals with forced, judicially aided reappropriation of social security proceeds, such as garnishment, attachment, etc., and it is inapplicable to the Chapter 13 plan confirmation context, when the court does nothing but review a debtor's finances and determine whether his proposed repayment plan is fair. *See, e.g., in re Welsh*, 465 B.R. 843, 859-60 (B.A.P. 9th Cir. 2012) (Pappas, J., dissenting) ("That 42 U.S.C. § 407(a) may place Social Security benefits out of the reach of, for example, a hungry chapter 7 bankruptcy trustee trying to assemble funds to distribute to creditors is no justification to disregard the existence of such income in judging a debtor's good faith in proposing a particular plan under chapter 13. In a chapter 13 case, a debtor's Social Security benefits are not being garnished, seized, or 'subjected to' the reach of creditors."), *Mains v. Foley*, No. 1:11-CV-456, 2012 WL 612006, at *4-6 (W.D. Mich. Feb. 24, 2012) ("The entire focus of section 407 is on a third party's compelled acquisition through legal process of someone else's Social Security benefits. That is not what the good faith test of the Bankruptcy Code section 1325(a) is doing."). But as a practical matter, the Court sees no distinction. If a bankruptcy court denies confirmation of a plan because the debtor has not contributed his social security income, then the debtor is likely to have to amend the plan and contribute social security income to get the relief he seeks, and his benefits are "subjected to" the reach of creditors.

recovery. Why would Congress have made this explicit change if it intended courts to have the discretion to effectively require debtors to add their social security benefits to their disposable income in order to receive confirmation of their plan? Just as the Ninth Circuit explained, a court that denies confirmation of a debtor's proposed plan because he does not pledge a sufficiently high percentage of his social security benefits to the repayment plan is essentially substituting its own judgment of "how much and what kind of income should be dedicated to the repayment plan" for Congress's.[5] *See Welsh*, 711 F.3d at 1131; *see also* 8 *Collier on Bankruptcy* ¶ 1325.04 ("The manifest purpose of Congress in excluding Social Security benefits from income, like the purpose of exempting them from process, was to protect those benefits. Considering a debtor's exclusion of Social Security income from plan payments as part of the good faith analysis would improperly render section 1325(b)'s ability to pay test, which incorporates the term "current monthly income," meaningless.").

The Seventh Circuit's cases on good faith in the Chapter 13 context do not require a contrary result. These cases arose in a slightly different context than this case; they required the court to consider the issue of when and whether a debtor acts in bad faith by seeking to discharge in Chapter 13 bankruptcy a debt that he incurred through his own fraud or other wrongdoing, and that is therefore not dischargeable under Chapter 7. *See Edwin R. Smith*, 286 F.3d at 463-64 (Ripple, J.) (plan not proposed in bad faith merely because fraud judgment owed by debtor, which had not been discharged in earlier Chapter 7 proceedings, would be paid only in small part); *Love*, 957 F.2d at 1358-59 (debtor filed Chapter 13 petition in bad faith in order to "thwart the collection of taxes" and "for the purpose of avoiding a portion of his debt to the IRS," which

---

[5] It is possible that the bankruptcy court viewed *Welsh* and like cases to be distinguishable because they involved a debtor's failure to contribute future *income* to a Chapter 13 plan, rather than accumulated funds "just sitting" in a bank account. But the Court fails to see any meaningful distinction. In either situation, the debtor has access to funds that are excluded from "current monthly income" and therefore from projected disposable income under the Bankruptcy Code, and the question is whether it is bad faith to withhold such funds from his creditors.

12

he had incurred as an "active tax protester"); *Schaitz*, 913 F.2d at 453, 456 (bankruptcy court erred by failing to consider whether the debtors, who had filed Chapter 13 plan proposing to pay less than half of fraud judgment that was not dischargeable under Chapter 7, were "just trying to hold on to as large as possible a share of their ill-gotten gains from defrauding" their judgment creditors); *Kevin W. Smith*, 848 F.2d at 814, 821 (in assessing good faith of Chapter 13 debtor's proposed plan to pay only 2% of fraud judgment that was not dischargeable under Chapter 7, bankruptcy court erred by failing to consider "the circumstances in which [the] debts arose and the fact that they are otherwise nondischargeable," and whether, "when assessing his scheme's downside, [the debtor] relied upon the favorable prospect of using bankruptcy law to avoid repaying his fraudulently won gains"); *Rimgale*, 669 F.2d at 429-30 (listing good faith factors bankruptcy court must use on remand in considering whether to confirm Chapter 13 plan proposing to pay approximately 11% of fraud judgment that was not dischargeable under Chapter 7).

From these cases, it emerges that the fact that a Chapter 13 debtor proposes to pay only a small portion of a debt that is not dischargeable in Chapter 7 is an important, though not necessarily determinative, factor that the bankruptcy court must take into consideration in its good faith analysis, and based on this principle, the bankruptcy court was quite correct to scrutinize Mr. Manzo's Plan. As all parties recognized at the confirmation hearing, Mr. Manzo's Plan effectively called for "stripping" Seaway's wholly unsecured junior mortgage lien (*i.e.* a junior lien secured by collateral whose value has fallen to less than the value of the senior lien), which is relief that a debtor cannot obtain under Chapter 7. *See Bank of Am., N.A. v. Caulkett*, 135 S. Ct. 1995, 2001 (2015). But the great weight of authority holds that this relief *is* available under Chapter 13. *See in re Woolsey*, 696 F.3d 1266, 1278-79 (10th Cir. 2012) (surveying cases)

(Gorsuch, J.). Thus, this case is broadly analogous to the Seventh Circuit decisions that have considered whether the debtor seeks relief under Chapter 13 that he could not obtain under Chapter 7. But it is clear from these decisions that the fact that a Chapter 13 debtor seeks relief unavailable under Chapter 7 is not sufficient, by itself, to demonstrate the debtor's bad faith.

For example, in *Edwin R. Smith*, the Seventh Circuit explained that "Congress has made it clear that some debts, although nondischargeable in Chapter 7, may be discharged under the more liberal rules of Chapter 13," and "[w]e are not free to second-guess Congress's policy choice in this regard." 286 F.3d at 467 (citing *Johnson v. Home State Bank,* 501 U.S. 78, 87 (1991)).[6] Thus, the Court held, "[a]lthough the nature of the underlying debt, not dischargeable in Chapter 7, weighs against a finding of good faith, this factor alone cannot defeat confirmation

---

[6] To be sure, the Seventh Circuit made this point in a different context; it was addressing Congress's choice to make certain debts stemming from the debtor's fraud nondischargeable under Chapter 7 but not Chapter 13, and in that context it is perhaps clearer that Congress made a "policy choice" to create "more liberal rules" for Chapter 13 debtors. *See Edwin R. Smith*, 286 F.3d at 468. Lien-stripping is treated differently in the Chapter 7 context based on the Supreme Court's interpretation of 11 U.S.C. § 506(d) in *Dewsnup v. Timm*, 502 U.S. 410, 417 (1992). In *Dewsnup*, the debtors argued that under § 506(d), read in conjunction with § 506(a), debtors' liens are "void" to the extent that they are not "secured" by collateral with actual value, but the Supreme Court found "ambiguity in the text of the statute" and, in the absence of a clearer indication of Congress's intent, the Court was "not convinced that Congress intended to depart from the pre-Code rule that liens pass through bankruptcy unaffected." 502 U.S. at 417. The Court recognized, however, that even under the "pre-Code statute," "involuntary reduction of the amount of a creditor's lien" was permitted in "reorganization proceedings," *id.* at 418-19, and the Code permits the same practice in Chapter 13 proceedings by providing that "the plan may . . . modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims." 11 U.S.C. § 1322(b)(2). (Under the Code, even an ostensibly secured claim is "an unsecured claim to the extent that the value of [the] creditor's interest . . . is less than the amount of [his] claim," 11 U.S.C. § 506(a); thus, because the value of Mr. Manzo's residence is less than the amount he owes on the primary mortgage, Seaway's interest in the residence based on the junior mortgage it holds is worthless, and its claim is wholly unsecured, so the principal residence exception for secured claims does not apply.) Because, unlike in the reorganization chapters, no other provision of the Code so much as "mentioned" lien-stripping in a Chapter 7 context, the Court concluded that Congress did not intend to grant Chapter 7 debtors that "broad new remedy." *Dewsnup*, 502 U.S. at 419-20.

To whatever extent, if at all, lien-stripping is impermissible in the Chapter 7 context based not on a clear congressional choice to treat Chapter 7 proceedings differently so much as on a shaky judicial interpretation of the Code that a number of courts and commentators have criticized, *see Bank of Am., N.A. v. Caulkett*, 135 S. Ct. 1995, 2000 n. 1 (2015); *In re Woolsey*, 696 F.3d 1266, 1278 (10th Cir. 2012)) (citing 4 *Collier on Bankruptcy*, ¶ 506.06[1] ("[T]here is no principled way to conclude that, although section 506(d) does not authorize lien stripping in chapter 7 cases, it has a different meaning in chapter 11, 12, and 13 matters.")), that only tends to strengthen Mr. Manzo's position in this appeal. The courts that have permitted lien-stripping in the Chapter 13 context have the stronger statutory basis for their reading, which only suggests that a Chapter 13 debtor who seeks to strip a wholly unsecured mortgage is not acting in bad faith because, as in *Welsh*, he is only seeking relief that the Code specifically grants him.

14

of [the debtor's] plan." *See Edwin R. Smith*, 286 F.3d at 468. Relatedly, the Seventh Circuit explained that it was not evidence of bad faith that the debtor proposed to repay only 10% of his creditor's unsecured claim:

> Congress has not adopted a minimum payment for confirmation of a Chapter 13 plan, and we cannot read one into the Code through its good faith requirement. *See in re Rimgale*, 669 F.2d at 431-32. Further, it is difficult to see how the low percentage of the payout adds anything to the other good faith factors and the other statutory requirements. The percentage repayment is a function of the size of the debt relative to the debtor's anticipated earnings; this factor is not relevant to determining whether the debtor has acted in good faith. The Code requires a debtor to commit all of his disposable income to repayment of his creditors over the term of his Chapter 13 plan. If this process, honestly and fairly undertaken, produces a payment that is a small percentage of the debt, the Code permits such a payment . . . .

*Id.* Based on this explanation of "the interplay between good faith under § 1325(a)(3) and the amount of repayment under § 1325(b)," and "[b]ecause Congress unambiguously clarified the amount a debtor is required to pay in § 1325(b), the good faith analysis of § 1325(a)(3) should not be considered when determining a payment amount." *In re Canniff*, 498 B.R. 213, 217 (Bankr. S.D. Ind. 2013). Rather, the good faith analysis should center on whether there are "other indicia of bad faith," such as "whether the debtor has [not] stated his debts and expenses accurately; whether he has made any fraudulent misrepresentation to mislead the bankruptcy court; or whether he has unfairly manipulated the Bankruptcy Code." *See in re Melander*, 506 B.R. 855, 860-62 (Bankr. D. Minn. 2014) (citing *Fink v. Thompson (In re Thompson)*, 439 B.R. 140, 143-44 (B.A.P. 8th Cir. 2010) and *Educ. Assistance Corp. v. Zellner*, 827 F.2d 1222, 1227 (8th Cir. 1987)).

In this case, the bankruptcy court's decision appears to have been based essentially on two aspects of the Plan: (1) stripping the lien, which Mr. Manzo could not have achieved under

15

Chapter 7,[7] while (2) retaining accumulated social security proceeds rather than paying them to the creditor whose lien was to be stripped. But as this Court has explained above, Congress specifically contemplated that Chapter 13 debtors like Mr. Manzo would be able to do each of these things. The bankruptcy court also placed some significance on the fact that Mr. Manzo was proposing to pay such a small percentage of Seaway's claim, only about 10%, stating that she would confirm the plan if he proposed to pay Seaway half of the $7,642.94 in accumulated social security benefits he was seeking to retain. But Chapter 13 contemplates that debtors may pay only small percentages of their creditors' unsecured claims, and courts—including the Seventh Circuit in *Edwin R. Smith*—have frequently permitted debtors to pay them at rates of 10% or less. *See* Keith M. Lundin & William H. Brown, *Chapter 13 Bankruptcy*, 4th Ed., § 195.1, at ¶ 2 n. 1 (citing cases). There was no suggestion at the confirmation hearing of any fraud, misrepresentation, or other deceptive or inequitable conduct on the part of Mr. Manzo in his bankruptcy proceedings.

It appears from the record before this Court that Mr. Manzo did nothing more or less than propose a plan that would, if confirmed, provide relief that the Bankruptcy Code is designed to offer. Like numerous courts under similar circumstances, this Court concludes that merely making such a proposal, without more, cannot support a finding of bad faith. *See, e.g., Ragos*, 700 F.3d at 227 ("[I]t is apparent that Debtors are not in bad faith merely for doing what the Code permits them to do."); *Caniff*, 498 B.R. at 217. This Court owes the bankruptcy court's finding of bad faith considerable deference, but in the absence of any indication in the record that

---

[7] Relatedly, Seaway argued in a written motion (R. at 81, ¶ 7) that if Mr. Manzo had proceeded under Chapter 7, not only would Seaway have preserved its lien but it would have obtained a greater monetary recovery. It is unclear whether this argument influenced the bankruptcy court's ruling denying confirmation of the Plan, but to the extent that the argument is based on the assumption that Mr. Manzo's accumulated social security benefits would have been part of the bankruptcy estate, the argument fails, as the Court has already explained. *See Carpenter*, 614 F.3d at 936; *Franklin*, 506 B.R. at 776.

Mr. Manzo did anything other than seek relief Congress intended Chapter 13 debtors to be eligible to receive under the Bankruptcy Code, it must remand to the bankruptcy court to determine whether there are any other facts, such as improper motives, manipulation, or misrepresentations on Mr. Manzo's part, that might support a finding of bad faith, or alternatively, whether Mr. Manzo's Plan should be confirmed. *See Schaitz*, 913 F.2d at 456.

## CONCLUSION

For the foregoing reasons, the bankruptcy court's decision is reversed, and this case is remanded to the bankruptcy court for further proceedings consistent with this Opinion.

**SO ORDERED.**                                      **ENTERED: August 25, 2017**

_____
**HON. JORGE ALONSO**
**United States District Judge**